*JOHN THOMAS v. JAMES H. L. HUNTER. **406**
*Decided November 13th, 1868.*

CONFISCATION OF PROPERTY OF THOSE IN CONFEDERATE SERVICE ; ACT OF CONGRESS OF 1862, CH. 195. LIMITATIONS ; NEW PROMISE ; MADE ON SUNDAY. SABBATH BREAKING. CASES TRIED WITHOUT A JURY ; APPEALS ; PRACTICE.

On the 23rd of March, 1861, A., a resident of Maryland, made his promissory note in favor of B., payable ninety days after date. B. passed the note away, and entered the Confederate army, and did not return to Maryland till the war was over. Before maturity the note came into the possession of a bank in Baltimore, and at maturity was protested for non-payment and remained in the possession and ownership of the bank until the war was ended. After the war B. again became the owner of the note for a valuable consideration, and brought suit on it against A., who plead the Statute of Limitations, to which B. replied a new promise, which at the trial was shown to have been made on Sunday. *Held:*

That the Code of Pub. Gen. Laws (1860), Art. 30, sec. 178, does not prevent the acknowledgment or new promise made on Sunday, from

being used in evidence, for the purpose of removing the bar of the Statute of Limitations.  (*a*)                                        p. 413

That there was nothing in the Act of Congress, of 1862, ch. 195, that could by any latitude of construction be held as intending to prevent a party situated as the plaintiff was, from purchasing notes or acquiring property after the close of the war, or as making such property liable to seizure and confiscation.                                        p. 414

Nor was it necessary that the plaintiff should have obtained a pardon or have complied with the provisions of the amnesty proclamation of the 29th of May, 1865, before he could sue upon the note so acquired.
                                                                      p. 414

That the plaintiff was entitled to recover interest upon the note pending the war.                                                    p. 414

Where a case is submitted to the court and tried without the intervention of a jury, on appeal, the Court of Appeals will not examine the facts in evidence, with a view to adjudge whether the finding of the court as to them was correct; but if a question of law is raised, and it appears by the record, it must be examined and decided, and in doing so, this court can look to the character of the facts only so far as may be necessary or proper to understand and apply the law in question. (*b*)                                                      p. 411

Appeal from the Court of Common Pleas.

This was an action brought by the appellee against the appellant, to recover the amount of a promissory note made **407** *by the latter on the 23rd of March, 1861, and payable ninety days after date to the order of the former, at the Bank of Baltimore.  The plaintiff parted with the note before it fell due, and, entering the Confederate army, did not return to the State of Maryland until after the war.  The defendant was a resident of Maryland at the date of the note, and so continued down to the time of the institution of this suit.  At the time of the maturity of the note, it was held by the Merchants' Bank of Baltimore, and not being paid, was protested at the instance of the Bank, and continued in its possession until the conclusion of the war, when the plaintiff became re-possessed of it and brought suit upon it.

---

(*a*)  See the Code of Pub. Gen. Laws (1888), Art. 27, sec. 247.

(*b*)  Cited in *Cross v. Kent,* 32 Md. 584; *Hooper v. Balto. and Yorktown Turnpike Co.,* 34 Md. 529; *Trustees, etc., v. Browne,* 39 Md. 162. See also *Andrews v. Clark,* 72 Md. 429.  And where an action is tried before the court without a jury, upon an agreed statement of facts, and no exceptions are taken, but the appeal is simply from the finding of the court, such judgment cannot be reviewed on appeal; see *New v. Taylor,* 82 Md. 40.

The defendant pleaded the Statute of Limitations, to which plea the plaintiff replied a new promise made within three years before suit brought, and, in support of this replication, offered evidence at the trial of a conversation held on a certain *Sunday* in the month of November, 1865.

The case was tried before the court—a jury being dispensed with by consent—and the court (King, J.) rendered its decision in favor of the plaintiff for the full amount of his claim, with interest. To this finding, the defendant excepted and took the present appeal.

The cause was argued before Bartol, C. J., Nelson, Stewart and Miller, JJ.

*E. J. D. Cross,* for the appellant:

The claim of the plaintiff was barred by the Statute of Limitations. At the time of the protest of the note, June 24, 1861, the title was in the Merchants' Bank. The plaintiff did not acquire possession of the note until some time in 1865. He, therefore, took the title of the Merchants' Bank, the last holder, which was barred by the Statute of Limitations. No where in the evidence does it appear that at the time of the alleged new promise, the plaintiff, was the owner or holder of the note, or that, at that time the relation of *debtor or creditor ex- **408** isted between the plaintiff and the defendant. *Woodruff v. Moore,* 8 Barb. 171; *Scarpellini v. Atchison,* 53 Eng. Com. Law, 864.

There is no evidence sufficient in law of a subsequent acknowledgment of the debt, to take the case out of the Statute of Limitations. The alleged new promise is not sufficient to remove the bar, because it was not a legal and binding promise, having been made on Sunday. Code Pub. Gen. Laws, Art. 30, sec. 178; 2 Parsons Notes and Bills, 662; *Baumgardner v. Taylor,* 28 Ala. 687; *Allen v. Deming,* 14 N. H. 133; *Smith v. Wilcox,* 24 N. Y. 353; *Saltmarsh v. Tuthill,* 13 Ala. 390, 403, 406; *Reynolds v. Stevenson,* 4 Ind. 619; *Link v. Clemens,* 7 Black, 479. As to contracts on Sunday, see 2 Parsons on Cont. 759, and notes; *Edelin v. State,* 4 G. & J. 277; *Bullet v. Musgrave,* 3 Gill, 31; *Yingling v. Kohlhass,* 18 Md. 148; *State v. Jarrett,* 17 Md. 309; *Hilton v. Houghton,* 35 Maine, 143; *Pat-*

*tee v. Greely,* 13 Met. 284; *Murphy v. Simpson,* 14 B. Monroe, 419.

• The property of the plaintiff to the note in suit was divested by the operation of the Act of Congress of 17th July, 1862, ch. 195, sec. 6. 12 U. S. Stat. at Large, 591; *Smith v. Maryland,* 6 Cranch, 286.

Or admitting that the property of the plaintiff was not divested by the Act of Congress of July 17, 1862, yet he could not recover until he had shown that he had complied with the provisions of the amnesty proclamation of 29th May, 1865. 13 U. S. Stat. at Large, 760; *Armstrong's Foundry,* 6 Wallace, 767, 768; *Garland's Case,* 4 Wallace, 380. The plaintiff in this case was not entitled to recover interest on his claim during the war between the Confederate States and the United States, he being an officer of the Confederate States and the defendant being a citizen of the State of Maryland, and residing therein during the war. *Ins. Co. v. Steward,* 6 Am. Law Reg. 735; *Tucker v. Watson,* 6 Am. Law Reg. 220; *Chamberlain v.* **409** *Brown,* 2 Bland, 221, note; *\*Christie v. Hammond,* 2 Bland, 645, note; *Bordley v. Eden,* 3 H. & McH. 167; *McCall v. Turner,* 1 Call, 133; *Brewer v. Hastie,* 3 Call, 22; *Hoar v. Allen,* 2 Dallas, 102; *Foxcroft v. Nagle,* 2 Dallas, 132; *Conn v. Penn,* Peters C. C. 496.

*Stewart Brown,* for the appellee:

The appellee, in the first place, relies upon the authority of *Tinges v. Moal,* 25 Md. 480, where the court lays down this rule, " That upon a case submitted to the court below, without the intervention of a jury, this court will not examine the facts in evidence in the Bill of Exceptions with a view to adjudge whether the finding by the court was or was not correct. As to that branch of the case, no appeal lies, and this court will entertain none. If a question of law had been raised upon them below for decision and that appears from the record, it is the duty of this court to examine and pronounce upon it. This court can look to the character of the facts, in proof, only so far as may be necessary or proper to understand and apply the law in question." Applying this rule to the case at bar, it is clear that the following facts found by the Judge, in his opinion, and made the basis of his judgment, are conclusively es-

tablished, to wit: That the debt was properly proven, and that it had never been paid; that the promissory note given therefor, had been parted with before the war, and before maturity, to a *bona fide* holder, and was in the possession of and protested by the Merchants' Bank of Baltimore as the holder thereof at maturity; that the plaintiff became owner of it for valuable consideration, after the war was over, and that subsequently, in December, 1865, a new and express promise to pay was made by the defendant. Upon this branch of the case, it is clear that the testimony produced by the appellee was legal and competent testimony, and was properly admitted by the court; and the court correctly applied the law to the facts. *Oliver v. Gray,* 1 H. & G. 204, 218; Angell on Limitations, \*sec. **410** 269; *Goodman v. Simonds,* 20 How. 365; *Boyd v. McCann,* 10 Md. 118, 124.

This view of the case disposes of all the questions raised, either in this court or the court below—because,

1st. Whether the ruling of the Supreme Court, in the case of *Hanger v. Abbott,* 6 Wallace, 532, is applicable to this case or not, the bar of the statute was effectually removed by the new promise.

2nd. Because, upon the state of facts found by the court, the appellee was entitled to interest as a matter of right. If, indeed, it had been left to the discretion of a jury, no jury would, under the circumstances of this case, have denied him interest. *Newson v. Douglass,* 7 H. & J. 417.

3rd. The Act of Congress of 1862, ch. 195, relied on by the appellant, interposed no bar to the recovery by the appellee; because, in the first place, the note was not held or owned by him during the war. And even if it had been held and owned by him during the war, the Act of Congress did not operate after the war; it was only intended as a war measure, and its effect ceased and the remedy, if suspended during the war, revived when the war ceased. See sec. 3 of said Act, and *Hanger v. Abbott,* 6 Wallace, 532.

In reference to the point not raised below, that a promise made on Sunday is not binding, it is submitted,

1st. That it is too late to raise that objection in the appellate court. Act of 1825, ch. 117, Code of Pub. Gen. Laws, Art. 5, sec. 12; *Mundell v. Perry,* 2 G. & J. 207; *Davis v. Leab,*

2 G. & J. 302; *Grahame v. Harris,* 5 G. & J. 489; *Brice v. Randall,* 7 G. & J. 349; *Penn. Steam Nav. Co. v. Dandridge,* 8 G. & J. 314; *State v. Harrison,* 9 G. & J. 15; *Gray v. Crook,* 12 G. & J. 236.

2nd.  If not too late, then it is insisted, that there was no violation, or intended violation, of the Sunday law; that the plaintiff was not guilty of any such violation; that the promise made upon an executed consideration, merely important in reference to the remedy, was sufficient, though made on **411** *Sunday. 1 Smith on Contracts, 182, note; 7 Barr, 492; *Fox v. Mensch,* 3 Watts & Serg. 444; *Scarfe v. Morgan,* 4 M. & W. 270; *Powhatan Steamboat Co. v. R. R. Co.* 24 How. 247; *R. R. Co. v. Phil. & Havre de Grace Steam Tow Boat Co.* 23 How. 209.

Miller, J., delivered the opinion of the court.

This case, by consent of parties, was submitted to the court and tried without the intervention of a jury; and before judgment entered a bill of exceptions was taken.  The practice of the appellate court in such cases, as settled by *Tinges v. Moal,* 25 Md. 480, is that this court will not examine the facts in evidence, with a view to adjudge whether the finding of the court as to them was correct, and in this respect no appeal lies or will be entertained; but if a question of law is raised, and that appears from the record, it must be examined and decided, and in doing so, this court can look to the character of the facts only so far as may necessary or proper to understand or apply the law in question.  The judge below delivered an opinion, stating his conclusions upon the facts and the law applicable thereto, and upon this appeal we must assume it was established by proof that the promissory note sued on was proved and had never been paid; that the plaintiff, before the war, and before its maturity, parted with the note, for value, to a *bona fide* holder, at whose instance it was protested at maturity, and who remained its owner during the war; that after the war was over, the plaintiff *became again* the holder and owner of the note for value, and that subsequently, in December, 1866, whilst the plaintiff was such owner and holder, the defendant acknowledged the debt and promised to pay it.

There is nothing in the first objection to the finding of the court, that the claim was barred by limitations, unless the second objection that there was no sufficient evidence, in law, of a subsequent acknowledgment to remove the bar of the Statute, is sound. The only question upon this second objec-*tion, in view of the facts above stated and assumed to **412** be established is, was the acknowledgment or new promise sufficient evidence in law, or, in other words, admissible in evidence to remove the bar of the Statute, *it having been made on Sunday.* This was the principal point argued at bar. Numerous decisions in England and in this country were cited, most of which are collected in the notes to 2 Parsons on Contracts, 757-760, where the provisions of the Statutes of many of the States relative to the observance of the Sabbath-day, or Sunday, are also set forth. The questions mainly discussed in these authorities relate to the validity of contracts made on Sunday, and the decisions are by no means uniform. The language of the Statutes varies in different States, and in some instances the same language has been differently construed by different courts. The validity of a contract made on Sunday is not, however, the question now before us. The suit is not brought on the admission or new promise as a contract, but on the note, the original cause of action, and the new promise is sought to be used as evidence to remove the bar of the Statute and restore the remedy. So far as the research of counsel or our own has extended, the precise question now presented has arisen and been decided in two States only. In Alabama, where the Statute provides that "no worldly business or employment, ordinary or servile work, (works of necessity or charity excepted,) shall be done, performed or practised by any person on Sunday;" it has been held that a promise to pay a debt, whether express or implied, if made on Sunday, does not take the case out of the Statute of Limitations. *Baumgardner v. Taylor,* 28 Ala. 687. On the other hand, in Pennsylvania, where the Statute enacts that "no person shall do or perform any worldly employment or business whatsoever on Sunday, works of necessity and charity only excepted," it has been decided that a bond, though·void because executed on Sunday, may still be used in evidence as an admission of a liability. *Lea v. Hopkins,* 7 Pa. St. 492. The distinction between the validity

**413** *of a contract and the admissibility in evidence of an admission, made on Sunday, is very clearly drawn in this latter case. " The bond," says Coulter, J., delivering the opinion of the court, "was void as a contract, because as a contract it would have been transacting worldly business on Sunday. But a man may acknowledge the truth on Sunday, and if he does, I do not know any rule that would prevent its being given in evidence against him. If a man writes a letter on Sunday and sends it to his creditor, who gets it on Monday, or even takes it from the office on Sunday, I presume it would be competent evidence against the debtor. As a bond or contract the suit is founded on it, and cannot be maintained, because it is against a public statute, but as an admission it is only evidence of a previously existing liability. The suit is founded on the previous liability; the admission is only evidence of the fact that the defendant acknowledged that liability. We cannot carry the law so far as to say that the admission of a previously existing debt made on the Sabbath is not good." The language of our statute (Code, Art. 30, sec. 178,) is " no person whatsoever shall *work or do any bodily labor* on the Lord's day, commonly called Sunday, etc., works of necessity and charity always excepted;" and we adopt the conclusion of the Pennsylvania court, that we cannot carry this law so far as to say that it forbids the acknowledgment or new promise made in this case from being used in evidence for the purpose for which it was offered. We are to be distinctly understood as making no decision and intimating no opinion as to the construction or effect of this statute, except upon the precise point presented by this record for adjudication.

The third objection that the finding of the court, in favor of the plaintiff, is in contravention of the provisions of the Act of Congress of 1862, ch. 195, making liable to seizure and confiscation the property and credits of persons therein referred to, is also untenable. The plaintiff was not the holder or owner **414** of the note, or in any way interested in it, *during the war. He had parted with it for value, before maturity, before the war commenced, and long before this law was passed. He acquired a new title to, and ownership of it after the war had ceased, and certainly there is nothing in this Act of Congress that, by any latitude of construction, can be held as intending

to prevent a party, situated as the plaintiff was, from purchasing notes or acquiring property after the close of the war, or as making such property liable to seizure and confiscation. Nor was it necessary that the plaintiff should have obtained a pardon, or have complied with the provisions of the Amnesty Proclamation of the 29th of May, 1865, before he could' sue upon the note so acquired.

The fact that the plaintiff was not the owner or holder of the note during the war is also fatal to the fourth and last objection, that he was not entitled to recover interest upon it pending the war. The note at maturity was in the possession of the Merchants' Bank of Baltimore, the holder and owner for value, as we must assume (*Goodman v. Simonds*, 20 How. 365,) at whose instance it was protested and in whose possession it remained until the close of the war. The defendant was a citizen of Maryland residing in Baltimore during the war, and is, under these circumstances, as much liable to the plaintiff for interest on this note as he would have been to any other purchaser thereof.

*Judgment affirmed.*

---

*JAMES M. LESTER *v.* THE MAYOR AND **415** CITY COUNCIL OF BALTIMORE.

*Decided November 13th, 1868.*

PAYMENTS BY MISTAKE.

Where a person with full knowledge of the *facts, voluntarily* pays a demand unjustly made upon him, though attempted or threatened to be enforced by proceedings, it will not be considered as paid by compulsion, and the party thus paying is not entitled to recover back the money paid, though he may have protested against' the unfounded claim at the time of payment made. (*a*)                    p. 418

Where money has been paid under a mistake of the facts, or under circumstances of fraud or extortion, or as a necessary means to obtain

---

(*a*)   As to payments by mistake, see *Baltimore v. Lefferman*, 4 Gill, 358; *Broumel v. White*, decided by the Court of Appeals, April 1, 1898.